UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARIUS D. THOMAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20 C 1534 ) ) Judge Sara L. Ellis |
| COUNTY OF COOK, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

After Defendant County of Cook (the "County") terminated Plaintiff Darius D. Thomas' employment, Thomas filed this lawsuit against the County. In his amended complaint, Thomas, who suffers from Type 1 diabetes, alleges that the County violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by terminating him based on his disability and failing to accommodate his disability. The County has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Thomas has sufficiently pleaded that the County violated the ADA and Rehabilitation Act by terminating him based on his disability, his amended complaint does not set forth a claim based on the County's alleged failure to accommodate his disability.

## BACKGROUND[1]

On June 10, 2019, the County hired Thomas to work at Cook County Health's outpatient clinic (the "Clinic") located at 1969 W. Ogden Ave. in Chicago, Illinois as a building service worker. In this position, he served as a floor tech cleaning floors at the Clinic. Thomas had previously performed the same job at the Clinic from June to November 2018 through a

---

[1] The Court takes the facts in the background section from Thomas' amended complaint and presumes them to be true for the purpose of resolving the County's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

contracted agency. During his prior stint at the Clinic, Thomas at times arrived at work late and needed to take breaks to address low or high sugar levels. But he completed his job competently and did not receive any citations or discipline for tardiness, with the contract position ending only because the agency's contract with the County expired.

When a similar position became available at the Clinic, Thomas applied and the County hired him directly. As part of the hiring process, the County performed a medical screening, which revealed that Thomas suffered from Type 1 diabetes. His diabetes caused him to suffer from fatigue and low energy, meaning that he sometimes had difficulty waking up, required more time to get moving, and needed to take breaks at work to address his blood sugar levels. But his diabetes did not keep him from performing his work competently and efficiently.

Upon his hiring, Thomas received an employee handbook. The handbook outlined an attendance policy that excluded "authorized absences due to . . . illness." Doc. 21 ¶ 14. The handbook also outlined a progressive discipline system for tardiness and absences, beginning with counseling, followed by a verbal reprimand, written reprimand, one-day suspension, three-day suspension, ten-day suspension, and finally, termination. The Clinic's personnel rules also identified "[r]epeated tardiness or excessive absenteeism" as a "non-major cause" infraction warranting the initial "imposition of lesser levels of discipline unless disciplinary action ha[d] previously been imposed." *Id.*

Thomas occasionally arrived late to work due to his diabetes, although he arrived within the five-minute grace period at the start of his shift on several of these occasions. The County did not impose any discipline for these instances of tardiness, however, until August 19, 2019, when Thomas' supervisor, Brian Stallworth, called Thomas into his office and fired him. Thomas received no advance notice of his termination or the possibility of termination, and the

County had not subjected him to discipline before that date. The County provided Thomas with a termination letter, indicating the termination of his employment effective immediately. The letter cited as the basis for his termination several personnel rules related to negligence, incompetence, and failure to follow instructions, as well as repeated tardiness or excessive absenteeism and conduct that an employee should reasonably know is prohibited.

After his termination, Thomas sought unemployment benefits. The County contested his application, contending that it had fired him for misconduct, which disqualified him from receiving unemployment. An administrative law judge ("ALJ") held an evidentiary hearing and granted Thomas benefits, concluding that Thomas had not committed misconduct but rather had been discharged for excessive tardiness, which occurred due to his diabetes. The ALJ also concluded that Thomas had informed the County about his diabetes before being hired, that the County had not warned Thomas that his job was in jeopardy, and that Thomas' attendance issues were due to circumstances beyond his control.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.  Disability Discrimination Claims (Counts I and III)**

The ADA prohibits an employer from discriminating against or failing to accommodate "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state an ADA discrimination claim, Thomas must allege (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) his disability caused him to suffer an adverse employment action. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). "[A] plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). Thomas' Rehabilitation Act claim tracks the standards applicable to his ADA claim, although it requires that the discrimination occur "solely by reason of" his disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). Because the County raises the same arguments for dismissal of both the ADA and Rehabilitation Act claims, the Court considers them together.

4

The County argues that the Court should dismiss Thomas' ADA and Rehabilitation Act discrimination claims because he did not adequately plead that he suffered an adverse employment action because of his disability. The County maintains that Thomas cannot show causation because he failed to control his diabetes and did not inform the County that his diabetes caused his tardiness. But the County demands too much of Thomas at the pleading stage. As the Seventh Circuit has recently reiterated, to survive a motion to dismiss in the employment discrimination context, "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022); *see also Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) (although "[s]pecific facts are unnecessary, . . . the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests"). In other words, to sufficiently allege an employment discrimination claim, a plaintiff need only identify the type of discrimination that occurred, by whom, and when. *Huri*, 804 F.3d at 833; *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims.").

Here, Thomas has met the pleading requirements for a disability discrimination claim, alleging that the County terminated him based on his disability in August 2019 and that his diabetes caused his tardiness and absenteeism, a fact of which the County was aware. He need not, as the County argues, negate the County's stated reasons for firing him at this stage. *See Kaminski*, 23 F.4th at 777 ("Satisfying Rule 8 and the accompanying standards articulated by the Supreme Court in *Twombly* and *Iqbal* does not require a plaintiff to plead a prima facie case of

5

employment discrimination. Put more plainly, a plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment." (citations omitted)). Even so, Thomas has included allegations that contradict the County's argument that he cannot state a discrimination claim because he failed to control his diabetes that caused his tardiness, alleging that the ALJ determined that his tardiness was due to circumstances beyond his control. *Cf. Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) ("[W]hen an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet 'the employer's legitimate job expectations' due to his failure to control a controllable disability, he cannot state a cause of action under the ADA." (citation omitted)). Thus, Thomas' discrimination claims survive the County's motion to dismiss. The County may renew its arguments as to Thomas' inability to demonstrate causation at summary judgment after the parties have had the opportunity to develop the record more fully. *See Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) ("It is enough for a plaintiff to assert that she was treated worse because of protected characteristics. . . . Whether she can prove this is a subject for a later stage of the litigation.").

**II.    Failure to Accommodate Claims (Counts II and III)**

To establish his failure to accommodate claims under the ADA and the Rehabilitation Act, Thomas must allege that (1) he is a qualified individual with a disability, (2) the County was aware of his disability, and (3) the County failed to reasonably accommodate his disability. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015); *Gratzl v. Off. of the Chief Judges of the 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 678 & n.2 (7th Cir. 2010) (analyzing Rehabilitation Act failure to accommodate claim by reference to the ADA's standards). The County argues that Thomas cannot proceed on these claims because he has not

6

alleged that he requested an accommodation from the County or that the County did not accommodate his disability.

"Generally, an employer is not obligated to accommodate an employee's disability until the employee informs the employer of the existence of the disability and requests an accommodation." *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018); *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) ("[A] plaintiff typically must *request* an accommodation for his disability in order to claim that he was improperly *denied* an accommodation under the ADA."). Here, although the County knew of Thomas' disability, the amended complaint does not include any allegations suggesting that Thomas ever requested an accommodation for his diabetes. Thus, standing alone, the County's knowledge of his diabetes did not trigger its duty to accommodate. *Preddie*, 799 F.3d at 813 (plaintiff could not prevail on his failure to accommodate claim where the evidence suggested only that the employer knew of the plaintiff's diabetic condition but not of any requests for accommodation of the condition); *see also Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014) ("[T]he ADA does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs."). Only in special circumstances, such as where the employee suffers from a severe cognitive disability or mental illness, can an employee who did not request an accommodation pursue a failure to accommodate claim. *Bultemeyer v. Ft. Wayne Cmty. Schs.*, 100 F.3d 1281, 1285–87 (7th Cir. 1996). Here, Thomas argues, that he need not have requested an accommodation from the County because the County provided him with no reason to believe that his tardiness posed an issue until his termination. But Thomas has not pointed the Court to, and

7

the Court is not aware of, any authority recognizing this as a basis to excuse the employee's obligation to proactively request an accommodation. Consequently, without a request for accommodation, Thomas has not sufficiently alleged a failure to accommodate claim. *See Inman v. Lemont Pub. Libr. Dist.*, No. 19 C 5282, 2020 WL 5209827, at *7 (N.D. Ill. Sept. 1, 2020) ("Absent some form of proactive request by Inman to Pointon, Inman's [failure to accommodate] claim fails even if the library had some general knowledge about Inman's knee replacement surgeries.").

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the County's motion to dismiss [30]. The Court dismisses Thomas' failure to accommodate claims under the ADA and Rehabilitation Act (Count II and part of Count III) without prejudice.

Dated: March 23, 2022

SARA L. ELLIS
United States District Judge